May it please the court. Eric Levin for petitioner Michael Corbett. I'd like to reserve two minutes for rebuttal. The state court decision denying the Brady claim in this case is entitled to no deference because it was premised on an unreasonable determination of fact and application of law. The recorded jail house telephone calls at issue here contradicted important aspects of two key prosecution witnesses including Taylor Doe's testimony that the petitioner accused her of being just as guilty as he was because she witnessed an uncharged sexual assault against the complaining witness but did not tell the authorities. As well as Farren Doe's testimony that the petitioner offered her $30,000 not to testify about another uncharged sexual assault. In the recorded telephone calls the petitioner never admitted his guilt but professed his innocence throughout. But instead of contrasting the recording of the testimony of Taylor and Farren, the court unreasonably shifted focus to how Taylor and Farren interpreted or what they could have inferred from their conversations with the petitioner. But that's not what they testified to. For impeachment, isn't that really an appropriate standard? No. What they inferred or how they interpreted his communication with them would not have been relevant testimony and that's not what they testified to. But by definition it's what they're testifying to. I mean, remember the old childhood game telephone where you send a rumor or something around the room and it obviously changes along the way. Each witness is going to testify based on his or her perception and they are testifying based on their perception. So why isn't it appropriate for the court to say, well, that's not an unreasonable perception. That doesn't demonstrate false testimony. Well, because what they testified to was an admission that he made. They testified that he made an admission that he had committed an uncharged sexual assault against the complaining witness. The fact that they interpreted it one way, inferred from it something, isn't important, as important as the fact that he made this admission. And that's exactly what Is it your view that the transcripts, either Taylor or Farren, were exculpatory? They were exculpatory because They just had some impeaching value. They had impeaching value because Which is it? I mean, do you argue that the transcripts were exculpatory? No, they were not exculpatory. They had impeachment value. In your view, they were impeaching. They had some impeaching value. Yes. And they impeached directly their testimony. Their testimony is he said X and in the recorded phone calls he did not say X. And that X was an admission of guilt as to the uncharged sexual assaults, an important one. Counsel, it's my understanding here that the defendant was using a three-way call system or using a number so it was more difficult to track that he was the one placing the call. Is that correct? Yes. Are you aware of any authority that says there is a Brady violation or there's been suppression by the government when the defendant himself takes steps to make it harder for the government to understand what he's doing? Well, let's be clear about the timeline because even though he did make the call through a third party and the record is not clear whether that was an attempt to evade detection or because it was simply cheaper than making a long-distance call from the jail. But setting that aside, your point is it's more difficult for the prosecution to get access to this material. Yes. And what's important in that regard is that weeks before the defense asked the prosecution to produce this material, they knew it existed. The complaining witnesses, I mean, I'm sorry, Taylor and Farron, the prosecution witnesses in this case, were in communication with the law enforcement in San Jose telling them that they had been contacted. And in fact, the prosecutor in this case told the court that while there were a number of calls that she needed to sift through, that a caller ID had identified the phone number from which it was called. I appreciate the facts. Again, the question, though, is there any precedent you're aware of? For example, if a defendant encrypts information that he later claims to be exculpatory, is it the government's obligation to decrypt what the defendant did? Are you aware of any case law that requires the government to, in a sense, find what the defendant was trying to obscure in a Brady context? No. Ultimately, the question is, was it in their control? And they clearly had access and control to it. It was recorded within the jailhouse. They knew the number. I mean, certainly if it was a case in which he had encrypted this information in a way that they couldn't possibly get access to it, well, then it wouldn't necessarily be within their control. But this is not that case. And in fact, the state court didn't find that. There is a footnote in the matter is it was within their control and they were aware of it. So putting aside those problems that Judge Owens identified, let's just assume for a moment that this had some Brady, that this qualified as Brady material. You still have to persuade or demonstrate that it was material, that the outcome of the trial, that there's a reasonable probability that there would have been a different result or that a reasonable jury would have had reasonable doubt in light of this impeaching material. That's correct. So, I mean, this just wasn't the only evidence that the government presented. Well, let me break that in. The state presented the prosecution. Let me respond to that in two ways. The first question under AEDPA is, is the materiality holding of the state court opinion entitled to deference? And in this case, its materiality holding is wrapped up in its conclusion that it wasn't favorable. It found it fell outside of Brady and, therefore, it wasn't material. And as I've demonstrated, because it literally impeached what they said, the admissions he made, it was favorable. So I don't believe, and moreover, the court didn't engage in any of the analysis about materiality that the Supreme Court has modeled in case after case. If you look at the evidence in this case, you have a, so you have a lack of forensic evidence or physical evidence to corroborate the testimony of the complaining witness. You have a complaining witness who is relatively young, who comes in and gives conflicting and inconsistent testimony about what occurred. Conflicts with statements she made earlier to the police. And new allegations arise at the trial that were not revealed to the police. So there is, it is problematic testimony. But most importantly, it arises, the allegations arise in the context of domestic strife and a dissolution of a marriage in which prior to the revelation of the case, the plaintiff said, I'm going to take everything you have, and I'm going to make sure you go to jail. And more than that, you have evidence that this woman has control over, manipulates, and the complaining witness. So in that context, when you have two complaint, two additional witnesses, Taylor and Farron, coming in, testifying about admissions, testifying about the fact that the plaintiff has evidence that he's predisposed to commit this kind of crime and, in fact, did. And then you have a summation. Instructions irrespective, right? Even if the transcripts had been available? That's, yes, those instructions would have been there. But the point is, is that these witnesses were important witnesses. They were witnesses that the prosecution returned to in summation as evidence of the Petitioner's consciousness of guilt. So in light of all that, yes, it undermines confidence in the verdict. Now, what the court did instead, and I'll just finish on that, is it imagined how this information, the negative information in these phone calls could have been used. That's not the analysis. Whatever other qualities they had, they impeached those admissions and, therefore, were important. You can take the balance for rebuttal. Thank you. You're from the State. May it please the Court, David Baskind for the people, Mr. Beard. Briefly, Farron's testimony about, was, I'm sorry, I'm confused here. I'm going to go to Taylor's testimony. The only issue here that I think is really possibly arguably favorable is Taylor's testimony. Appellant, she saw Appellant rub the victim's vagina, and she failed to report it. And she testified that, you know, Appellant said that she was just as guilty as he was because she didn't report it. And, in fact, the jail call shows that Appellant actually said, if there was a crime, why didn't you report it to the police? And then Taylor replied, you're not going to turn this around on me. So, essentially, there is an argument there that, you know. It could be just a rhetorical question. Right. I mean, I think that, you know, as far as impeachment goes, Taylor testified that Appellant made it seem like, well, you're just as guilty as me, whereas the trial testimony, if I had really done something, you would have reported it. But the if doesn't come through her trial testimony, does it? I'm sorry, Your Honor. The if part doesn't come through in her trial testimony. I mean, the phone call suggests, okay, if I did it, you're just as guilty, which is a good bit short of saying I did it and you're guilty, too. And I think the latter is the sense you get from her testimony. So you seem to be acknowledging that at least with regard to that element. Right. That's what I'm doing, Your Honor. I'm saying that there is something favorable there. Well, let's start with her back there. I'm not sure the same thing can't apply to some of the others, but let's start with that one. Okay. Why isn't that a problem? The problem is that counsel is relying on this as impeachment evidence, and there's absolutely no indication that Taylor misrepresented the conversation. In fact, it was a very hostile conversation. She felt attacked by Appellant. She said in that conversation, you're not going to turn this around on me. So she clearly perceived this conversation as him trying to bring her in and make her seem guilty or this was somehow her fault. That was the way she perceived it, and that was a reasonable interpretation based on his aggression in the phone call. But in a broader sense, isn't it the case that the sense left from the recording is substantially less damning to defendant than her testimony? That is arguable. However, counsel is. Why shouldn't that be? Why shouldn't that information useful to defendant be something defendant has the opportunity to use? Well, counsel is arguing that it was impeachment evidence. So we're not going to the facts. Brady covers impeachment. Right. And I'm saying it's impeachment. Even if there's all that other nonsense, all that expletive language in that conversation. My understanding of impeachment evidence is you're impeaching the witness and saying that she misrepresented the call. And I'm saying she did not misrepresent the call. I think counsel is trying to put the evidence into a box because we have case law that speaks of exoneration and of impeachment. And this may fall someplace in between. It doesn't demonstrate any innocence. Right. And it doesn't really demonstrate the witness is lying. Right. But it does suggest a state of evidence that is more favorable to the defense case. Right. And why shouldn't we treat that as something that should be turned over under Brady? I'm not arguing that it shouldn't have been turned over. I'm arguing. The argument here is that it wasn't material. Right. That's what I'm arguing. I'm saying there is an argument to say it's favorable. That's a slightly – one of the problems with the Brady test is it wraps up the same factor. Yes. So you will acknowledge that it should have been made available. So then we start looking at what's the impact of the evidence. Right. And in the broader picture, you know, the daughter's evidence testimony had to have been pretty damning to defendant. If this takes at least some of the wind out of the sails, why couldn't it be concluded that it would have had an effect? Well, again, I don't see that it takes any wind out of the sails of Taylor's testimony. I don't think it's useful as impeachment at all. I mean, there is a contradiction there. I mean, I think that, you know, to the extent that the witness is a liar, she remembered it a certain way, and it's completely understandable that she remembered it that way. In fact, in the conversation, she says you're not going to turn this on me. So she – I don't quarrel with the notion that it doesn't show the witness to be a liar. Right. But it does at least take the edge off the testimony that seems to suggest that he acknowledged to her that he was guilty. Right. I understand, Your Honor. Which is, taking back the confession is an important thing. Right. I agree. And I want to put that in context. We're talking about Taylor's testimony about – we're talking about one sentence in her testimony. And, you know, I don't think the jury based its decision on one sentence in a trial that took a week or two. I think in the context of all of the evidence, especially Taylor's testimony that, you know, that she saw him rub the victim's vagina, that she saw him look at pictures of her in a lewd way, in combination with Farron's testimony that he molested her when she was four, molested her again when she was 12, and her testimony that, you know, this is about this little girl. She acted just like me when you did that to me. And that little girl was messed with, Dad. And then you have the victim who gave consistent and credible testimony. And then you also have appellant who had two pieces of evidence that undermined his credibility. One was that the police gave him a ruse about finding DNA evidence on the girl's panties. And he made up a story to try to cover that up. So, clearly, he's showing consciousness of guilt. And the other thing is that, you know, there's no question that he was trying to entice the daughters with the sale of the land. That also shows consciousness of guilt. Excuse me, counsel. What I thought your argument was going to be is let's assume the defense is right and the defense had copies of these recordings before the trial. So would the prosecution. And presumably the prosecution would have had that witness on the stand and played those recordings and then would stop the recording and say, now, Taylor, what did you take that to mean when he mentioned X? And she would say, I thought he was trying to do whatever. And it would be essentially the same testimony. Am I misreading your argument? Is that what you're doing? No, you're right. And I mentioned some of that in my argument. And I agree with you. And thank you for saying that. I think, you know, overall, there's no question that the jail calls are, you know, detrimental and inculpatory. So, you know, we're fighting over one sentence that, you know, was maybe, you know, if we compare, you know, what she remembered from a conversation three months earlier to one sentence in her testimony, we can find a little bit of a not aligning perfectly, but completely understandable, not intentional. And there was a whole slew of other evidence that showed that he had molested his daughters and the victim. So we're fighting over a little tiny kind of, yeah, well, maybe she didn't remember it exactly or maybe she interpreted it one way. And she probably interpreted it the right way and that probably he was trying to put it on her because it was a very hostile call and he was coming after her. So I think that's all, if there are no questions. Thank you. Thank you. Just briefly, the notion that we're fighting over one sentence I think really misses the point. This was, in effect, a confession as to having victimized the complaining witness in this case. In Arizona versus Fulminante, the Supreme Court talked about confessions as unlike any other kind of evidence, the most powerful evidence there is. So I think it's unfair to talk about it as fighting over one sentence. The notion that there were other things within these calls that could have been used does not, for the prosecution's benefit, does not have a place in the Brady analysis. The Supreme Court has been clear in cases like Strickler versus Green and Bagley that whatever the other characteristics of the Brady material, the operative question is could it have been used to impeach testimony. And in this case, the information in these recorded phone calls could have been used not only to impeach the witnesses and their credibility, but to directly impeach the testimony that petitioner had admitted guilt as to the uncharged crimes or had attempted to offer a quid pro quo to prevent additional damning testimony from coming in. Okay. Thanks. Thank you. The matter is submitted.
judges: Paez, Clifton, Owens